CARL F. JR. AND JACQUELYN C. WORDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Worden v. Commissioner
Docket No. 11200-79.
United States Tax Court
T.C. Memo 1981-366; 1981 Tax Ct. Memo LEXIS 376; 42 T.C.M. (CCH) 399; T.C.M. (RIA) 81366; July 15, 1981. Carl F. Worden, Jr., pro se. Henry E. O'Neill, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 6,535 in petitioners' Federal income tax for the year 1977. After concessions, the issues remaining for decision are: 1. Whether the petitioners are entitled to deductions for (a) automobile business expense mileage, (b) travel expenses, (c) commission "charge-backs", (d) interest, and (e) sales tax in amounts greater than those allowed by respondent. 2. Whether the petitioners are entitled to deduct as a medical expense under section 213[1] the cost of installing a swimming pool at their residence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Carl F. Worden, Jr. and Jacquelyn C. Worden (petitioners) were *378 husband and wife in 1977. They resided in San Jose, California, when their petition was filed in this case. Petitioners filed a timely joint Federal income tax return for 1977 on which they claimed the following deductions, all of which were disallowed by respondent for lack of substantiation: Interest
$ 7,074.00
Employee Business Expense
10,919.00
Rental Loss
4,781.00
Sales Tax - Major Purchases -
529.00
Total
$ 23,303.00
Petitioners' tax records and receipts for 1977 were provided to their accountant prior to the preparation of their Federal income tax return. They were then returned to petitioners. Later, when they were notified about the audit of their tax return, the records, receipts and other substantiating data were again given to the accounting firm where they were either misplaced or lost. Carl F. Worden, Jr. (petitioner) sold disability insurance on a commission basis for the Combined Insurance Company of America (hereinafter referred to as Combined) throughout 1977. Mrs. Worden also sold insurance for Combined during the first three months of 1977. They were not provided with office space by Combined. Instead, they maintained *379 an office in their home, which was located at 4960 Minas Drive, San Jose, California. Petitioner handled a substantial volume (thousands of policies) of low cost disability insurance. The initial cost of a policy was $ 20 for a six-month period. Petitioner would sell about 100 new policies each week. He processed a substantial number of renewals constantly over each six-month period. Automobile Expenses
From January through June 1977, petitioner worked the San Mateo County territory, which ran from Daly City South to Menlo Park. From his home office in San Jose to Daly City the distance by automobile is 43 miles, and the distance to Menlo Park is 21 miles. At the beginning of each six-month period the petitioner would start in Daly City, then cover south San Francisco, and finally work his way into Menlo Park. In July he would start all over again in Daly City. Usually the petitioner worked Monday through Saturday. Once he reached the territory he was servicing, he would drive his automobile from 100 to 150 miles each day. Petitioners, who used separate cars, drove a total of 53,376 business miles in 1977, and they are entitled to a deduction for such automobile *380 expenses at the allowable mileage rates for that year. Travel Expenses
Combined required the petitioner to attend four regular sales meetings during 1977. Two were held in Los Angeles and one in Bakersfield. They usually lasted two days. These regular meetings were supplemented by several other meetings called "Ardmores", i.e., where the company required several of its high producing agents to concentrate in one area to set sales records. Petitioner paid his own expenses for food, lodging and transportation. He was not reimbursed by Combined. Mrs. Worden accompanied petitioner on some of the business trips. Records substantiating petitioner's travel expenses were given to his accountant but later lost. They consisted of hotel bills, restaurant receipts and airplane ticket stubs. On their Federal income tax return for 1977 the petitioners claimed $ 1,071 for "Food & Lodging & Flights," which deduction was disallowed by respondent. Petitioners failed to reconstruct their travel expenditures in the absence of their lost records. Commission "Charge-Backs" Petitioners claimed a deduction of $ 1,138 on their 1977 income tax return as an employee business *381 expense labeled "Commissions." The Wage and Tax Statement (Form W-2) issued by Combined overstated the amounts of commissions received by petitioner in 1977 because it did not properly reflect commission "charge-backs" which resulted from the cancellations of underlying insurance policies. The bi-weekly financial statements of Combined with respect to petitioner's account show various charges against commissions on cancellations and bad checks. When a policy was cancelled the commission earned by petitioner with respect to the policy would be charged back. Similarly, if a premium check was not paid, the commission earned by petitioner to which the check related would also be charged back. However, the amounts of bad checks would not be included in petitioner's income. Based on the amounts shown on the bi-weekly statements of Combined, the petitioner is entitled to a deduction of $ 180.98 for commission "charge-backs" in 1977. Interest
Petitioners have substantiated the following deductions for interest expense in 1977: Payee
Amount
Hibernia
$ 86.52
Commercial Credit
36.51
California Canadian
438.21
Sanco - #3983
675.73
Home Mortgage
4,510.52
Union Oil
78.61
Mastercharge
119.62
Beverly Woller
162.00
Total
$ 6,107.72
*382 Petitioners failed to substantiate other claimed interest deductions. Sales Tax
Petitioners claimed on their 1977 Federal income tax return additional sales tax of $ 529 for "major purchases." In that year they purchased for $ 9,000 various furnishings for their new home, including such items as living room and dining room furniture ($ 2,500), carpeting ($ 2,000) and a stereo ($ 3,000). These purchases were made from Bruener's in San Jose, Russell's in Santa Clara, Cost Plus Carpets and Cal West Stereo. Respondent allowed the petitioners a deduction of $ 429 as set forth in his optional state sales tax tables and an additional amount of $ 540 on the purchase of a new automobile. The additional amount for "major purchases" was disallowed by respondent. Swimming Pool
Petitioner has had chronic back problems since 1972. He has been treated for the condition by various chiropractors. In 1975 or 1976 he began seeing Dr. George A. Neukam, a chiropractor in Los Gatos, who told petitioner that swimming would help his back. Following such advice, the petitioner had a heated swimming pool, 38 feet long, built in the back yard of his residence in the fall of 1977 at *383 a cost of approximately $ 12,000. He had a Jacuzzi installed in the pool. Petitioner would swim in the pool about three or four times a week and he would use the Jacuzzi. The pool was also used by Mrs. Worden and their two sons. Petitioners sold their home in 1978 and moved to Aptos. They did not install a swimming pool in their new home because of financial considerations. Petitioner then began swimming in the ocean. Petitioners failed to prove that (1) the primary purpose of the swimming pool was for medical care and (2) that the amount claimed to be deductible represents only that amount by which the expenditure exceeded the increase in value to the related property (their residence). OPINION This is basically a substantiation case in which the Court is confronted with several factual issues. We have attempted to do our best with a record that is inadequate in some respects. The presentation of evidence was complicated because petitioners' records were lost or misplaced by their accounting firm. The disputed issues are discussed below. [2]
*384 1. Automobile Expenses
We are satisfied that the petitioners had substantial local transportation expenses during 1977. They claimed an employee business expense deduction by using the optional standard mileage rate method based on 56,500 business miles driven in that year. A reconstruction of the claimed expenses has resulted in a reduction to 53,396 business miles. Respondent contends that the total figure should be reduced by the mileage between the petitioners' residence and their first and last business stops of the day since such mileage is a nondeductible commuting expense. Thus, he argues that 19,200 miles and 5,226 miles are the commuting portions of the mileage claimed by the petitioner and Mrs. Worden, respectively. We disagree with respondent in view of the circumstances that existed here. It is true that costs of commuting to a taxpayer's place of business are nondeductible personal expenses. Commissioner v. Flowers, 326 U.S. 465 (1946); section 1.262-1(b)(5), Income Tax Regs. In the present case, however, the petitioners' place of business was at their residence. A taxpayer may deduct transportation expenses incurred when traveling from *385 work at home to another place of work if the taxpayer's home was his principal place of business. Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980), on appeal (9th Cir., Nov. 24, 1980). Accordingly, all of the automobile expenses are deductible under section 162(a). 2. Travel Expenses
Petitioners assert that they are entitled to a deduction of $ 1,071 for "Food & Lodging & Flights." The testimony was that their expenditures represented costs incurred in attending meetings in Los Angeles, Bakersfield and other places. Petitioners must satisfy the stringent substantiation requirements of section 274, and the applicable regulations, in order to obtain a deduction. Ordinarily, a taxpayer can satisfy such requirements by keeping a contemporaneous account book or diary or by producing documentary evidence (such as receipts and paid bills). Section 1.274-5, Income Tax Regs. Here the petitioners apparently kept records of such expenses but they were lost by their accountant. Although section 1.274-5(c)(5), Income Tax Regs., allows substantiation by "reasonable reconstruction" if the petitioners can show that the absence of records is beyond their control, *386 they have failed to adequately reconstruct their expenditures for the hotels, food and air fares. [3] The requirements of section 274 do not permit us to make an approximation under the doctrine enunciated in Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), with respect to the travel expenses claimed. Therefore, we must sustain on this record the respondent's disallowance of such expenses. 3. Commission "Charge-Backs"
The evidence shows that the petitioner is entitled to a deduction of $ 180.98 for commission "charge-backs" rather than the amount of $ 1,138 claimed on the tax return. 4. Interest
As reflected in the stipulation of facts and our findings, the petitioners are entitled to deduct interest expense of $ 6,107.72 instead of the $ 7,074 claimed on their tax return. The additional amounts have not been substantiated. 5. Sales Tax
The total sales tax deduction claimed by the petitioners for 1977 is comprised of three elements. *387 First, they claimed a deduction of $ 429 as set forth in the optional state sales tax tables. Second, they claimed a sales tax of $ 540 on the purchase of a new automobile. Respondent allowed both of these amounts. Third, they claimed additional sales tax of $ 529, labeling it "major purchases." Respondent disallowed this additional amount. Thus, we must decide whether the petitioners are entitled to deduct sales taxes for "major purchases" over and above the amount allowed in the optional state sales tax table. Petitioners were furnishing a new home in 1977 and they made purchases for living and dining room furniture ($ 2,500), carpeting ($ 2,000) and a stereo system ($ 3,000). These items aggregate $ 7,500. There were also some less expensive items purchased, which totaled another $ 1,500. The deduction allowed by section 164 for general sales tax is for taxes "paid" within the taxable year. Petitioners have established to our satisfaction that they actually paid sales taxes on $ 9,000 of purchases in 1977. They have not proved any greater amount. Such amount is allowable inlieuof the amount ($ 429) shown in the "Opional State Sales Tax Tables." It is *388 true that the guidelines to the tables provide that sales taxes can be added to the table amount for certain specific items. But these are the only items which the Commissioner, as a matter of administrative convenience, has permitted to be added to the optional table amount. In other words, a taxpayer has the choice of proving the entire amount of the sales taxes he paid during the year or claiming the table amount increased only by the specific items mentioned in the guideline explanations. See Edmister v. Commissioner, T.C. Memo. 1977-208. 6. Swimming Pool
At the trial the petitioners asserted that they should be allowed to deduct as a medical expense the cost of installing a swimming pool at their residence. Respondent did not object to the issue being raised at that time although no deduction was claimed for the swimming pool by petitioners on their Federal income tax return for 1977. We must decide whether the petitioners are entitled to a medical expense deduction under section 213, which provides in part: (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- *389 (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * * (e) Definitions.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, Petitioners have the burden of proving their entitlement to the deduction claimed. Oliver v. Commissioner, 364 F.2d 575, 577 (8th Cir. 1966). Thus the critical question here is whether they have carried their burden of establishing that the cost of the swimming pool was an expense incurred "for medical care" as that term is used in section 213. In considering this question it is necessary to bear in mind that section 262 prohibits deductions for personal, living and family expenses. The regulations under section 213 provide that deductions for expenditures for medical care are allowable if incurred "primarily for" the prevention or alleviation of illness. Section 1.213-1(e)(1)(ii), Income Tax Regs., provides *390 in significant part: Deductions for expenditures for medical care allowable under section 213 will be confinedstrictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. * * * (Emphasis added.) In relation to capital expenditures made for medical care, section 1.213-1(e)(1)(iii) provides as follows: (iii) Capital expenditures are generally not deductible for Federal income tax purposes. See section 263 and the regulations thereunder. However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. For purposes of section 213 and this paragraph, a capital expenditure made by the taxpayer may qualify as a medical expense, if it has as its primary purpose the medical care (as defined in subdivisions (i) and (ii) of this subparagraph) of the taxpayer, his spouse, or his dependent. Thus, a capital expenditure which is related only to the sick person and is not related to permanent improvement or betterment of property, if it otherwise qualifies as an expenditure for medical care, shall be deductible; for example, an *391 expenditure for eye glasses, a seeing eye dog, artificial teeth and limbs, a wheel chair, crutches, an inclinator or an air conditioner which is detachable from the property and purchased only for the use of a sick person, etc. Moreover, a capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care (within the meaning of this paragraph) may, nevertheless, qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is related directly to medical care. Such a situation could arise, for example, where a taxpayer is advised by a physician to install an elevator in his residence so that the taxpayer's wife who is afflicted with heart disease will not be required to climb stairs. If the cost of installing the elevator is $ 1,000 and the increase in the value of the residence is determined to be only $ 700, the difference of $ 300, which is the amount in excess of the value enhancement, is deductible as a medical expense. If, however, by reason of this expenditure, it is determined that the value of the residence has not been *392 increased, the entire cost of installing the elevator would qualify as a medical expense. * * * Therefore, under the regulations, the test is whether the expenditures were incurred for the "primary purpose" of, and were "related directly to" the petitioner's medical care. See Haines v. Commissioner, 71 T.C. 644, 647 (1979); Ferris v. Commissioner, 582 F.2d 1112 (7th Cir. 1978), revg. and remanding on another issue a Memorandum Opinion of this Court. In view of the limited facts and circumstances present in this case, we conclude that the petitioners have failed to prove that the expenses they incurred in building their $ 12,000 swimming pool were for the primary purpose of, and were related directly to, the husband's medical care. Swimming may have helped his back problems, but such evidence is insufficient to establish that the primary purpose for building hisown swimming pool was related directly to his medical care. Cf. Ferris v. Commissioner, supra. The mere fact that his chiropractor thought swimming would improve the condition of petitioner's back does not indicate a medical exigency for the installation of *393 his own pool. In Seymour v. Commissioner, 14 T.C. 1111, 1117 (1950), this Court said: The statute deals with "expenses paid for medical care of the taxpayer." Not every expenditure prescribed by a physician is to be catalogued under this term, nor is every expense that may be incurred for the physical comfort of a party a medical expense. * * * Having a swimming pool at his home certainly made it more convenient for the petitioner to exercise, but an expenditure that merely serves the convenience of the taxpayer cannot be treated as a medical expense. Except for the Jacuzzi the pool built by the petitioner apparently contained no special equipment to aid him with physical therapy, which makes this case stand in sharp contrast to Mason v. United States, an unreported case ( D. Hawaii 1957, 52 AFTR 1593, 57-2 USTC par. 10,012), where the taxpayer was allowed to deduct the cost of constructing a swimming pool because it was specially designed to provide hydrotherapy and included a ramp which allowed the taxpayer access to the pool from a wheelchair. The petitioner's pool was suitable for general use by others and, in fact, he admitted that it was *394 used by other members of his family. Moreover, the examples in the regulations relating to capital expenditures which are deductible as medical expenses involve special equipment which is not used significantly for any purpose other than the specific medical care of the taxpayer, i.e., a seeing eye dog, artificial limbs, wheelchair, or an air conditioner which is detachable from the property and purchased only for the use of the person in need of medical care. Section 1.213-1(e)(1)(iii), Income Tax Regs. We conclude that the petitioner desired and built his own pool for reasons of convenience, and not for the primary purpose of medical care. This is borne out by the fact that he made no effort to build another swimming pool when he moved his residence. Even if we assume, arguendo, that the petitioners did establish that the pool was built for the primary purpose of medical care, they have still failed to carry their burden of proving that the amount sought to be deducted represents only that amount by which the expenditure exceeded the increase in the value of the related property. Section 1.213-1(e)(1)(iii), Income Tax Regs.Absent this necessary proof, they cannot prevail. Therefore, *395 we decide this issue for the respondent. To reflect the concessions of the parties and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
2. A number of issues have been conceded by the parties and are reflected in the stipulation of facts and the trial transcript. These concessions can be given effect in the Rule 155 computations.↩
3. There is no evidence as to when the meetings were held; what hotels the petitioners stayed in; how much was paid for lodging; how much was paid for food or how much was paid for air transportation.↩