**Collins H. FERRIS and Bonnie Bach Ferris, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 77–2267.**

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1978.
Decided Aug. 15, 1978.

John A. Dudek, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Floyd A. Brynelson, Madison, Wis., for petitioners-appellees.

Before PELL, SPRECHER, and WOOD, Circuit Judges.

PELL, Circuit Judge.

In 1971, taxpayers Collins and Bonnie Ferris spent $194,660 to construct a swimming pool addition to their home in Maple Bluff, Wisconsin. The question is this litigation is how much of that sum may be deducted from the couple's 1971 income as a medical expense in computing their federal tax liability for that year.

Certain background facts are not disputed. Mrs. Ferris suffers from a degenerative spinal disorder which was, in 1970, causing her serious difficulty in walking or sitting. Her physician recommended that the Ferrises install a swimming pool at their residence and that Mrs. Ferris use it twice a day for the rest of her life to prevent the onset of permanent paralysis.

The Ferris residence was fairly described by Sherman Geib, taxpayers' expert ap-

praiser, as "a luxury residence with highest quality materials and workmanship. Numerous special features and meticulous attention to details." The residence is a two and one-half story English Tudor style home, constructed of hand-cut, hand-laid stone, with servants' quarters, pantries, and other amenities befitting a home of its type. Geib estimated the market value of the home prior to the construction of the pool addition at $275,000, including therein the $160,000 value of the 3.8 acres on which the house is built.

The Ferrises, responding to the physician's suggestion, retained an architect to design an addition to their home to enclose a swimming pool. He designed a 20 by 40 foot pool with a hand-cut stone edge, Tudor style semi-circular ends, and a fountain. He recommended that the housing structure and the interior areas ought to be designed so as to use materials architecturally compatible with the main residence and of the same quality construction. The Ferrises agreed, and the exterior of the addition was constructed of hand-cut, hand-laid stone, with an expensive roof to match that of the residence. The interior featured more hand-cut stone for some walls, exposed cedar paneling for others, a cathedral ceiling with exposed wood paneling, and a ceramic tile pool deck area. All of these features, needless to say, were costly. The architect also proposed, and the Ferrises accepted, inclusion in the structure of a number of recreational entertainment facilities, such as a bar and cooking area, a sauna bath, an open terrace, a raised dining area, an indoor sunning area, and two dressing rooms. Geib, the appraiser, estimated that the swimming pool addition increased the value of the Ferris home by $97,330.

On their joint federal tax return for 1971, taxpayers claimed that $172,160 of the

$194,660 spent on the pool addition were expenses for medical care within the meaning of 26 U.S.C. § 213.[1] Taxpayers had reduced the cost of the pool by the amount of money estimated to have been spent for some of the entertainment and recreational features included in the addition. Based on Geib's appraisal that the increase in the value of the residence would be roughly 50% of the cost of the addition, taxpayers claimed as deductible uncompensated expenses for medical care $86,000. The Commissioner of Internal Revenue took a different view, determining that the entire cost of a building to house the pool was not incurred primarily for medical purposes, and, using taxpayers' appraiser's 50% value added factor, allowing only a deduction of $6,500, roughly one-half of the $13,074 cost of the pool itself.

In the proceedings in the Tax Court, the Commissioner conceded that some sort of enclosure was medically necessary if Mrs. Ferris was to take twice-daily swims during the winter, and the battle shifted to the question of how much of the costs of the luxurious addition constructed by the Ferrises was properly deductible. The Commissioner contended that the expensive construction materials used were not medically necessary, and that a cost reduction should be made to account for the fact that the non-medical features built into the addition necessarily increased its size above what would have been medically necessary. He argued that an adequate pool with enclosure could have been built for $70,000 that would have increased the value of taxpayers' residence by $31,000, and thus that only $39,000 should be considered a medical expense.

The Tax Court found as a fact that "no doubt . . . a large portion of the total cost of the . . . addition was attributable to the need of having the structure

1. Section 213(e)(1) provides, as pertinent:

The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body . . . . .

Section 213(a) provides for the deductibility of the uncompensated amount of the "expenses paid during the taxable year . . . . . for medial care of the taxpayer . . . . ." to the extent that amount exceeds 3% of adjusted gross income.

architecturally and aesthetically compatible with petitioner's residence which is clearly a personal motivation." The court rejected the Commissioner's argument that the degree to which the addition's costs could be considered medical expenses should be accordingly reduced, however, because it was aware of "no case limiting a medical expense within the meaning of section 213 to the cheapest form of treatment." The court did agree with the Commissioner that a reduction to account for the enlarged size of the building due to the clearly nonessential features of the addition was appropriate, and reduced taxpayers' claimed medical expense by $4,000 (50% of the $8,000 it found allocable to the space for nonessentials). The court reasoned, alternatively, that the Commissioner's hypothetical $70,-000 addition (with $10,000 of extra costs the court thought were medically necessary but which were not included in the Commissioner's hypothetical figures) would have added nothing to the value of taxpayers' residence, thus yielding virtually the same result the court had reached by its preferred approach. The Commissioner appeals.

As we have indicated, the Commissioner does not dispute that the reasonable costs of a swimming pool and enclosure, to the degree they are uncompensated by increased value in taxpayers' residence, are properly deductible as a medical expense within the meaning of § 213 in the circumstances of this case. It no doubt would startle the average taxpayer that the cost of an enclosed swimming pool facility, which would typically be erected for other than medical purposes and which, even given a medical motive for its construction, could receive substantial nonmedical use once built and could be deducted for federal income tax purposes.[2] Even those with passing familiarity with federal tax principles might well be surprised that an expense like this, which is clearly capital in nature, could possibly be deducted in its entirety in the year in which incurred. *See* 26 U.S.C. § 263(a).

■ Nonetheless, this is the approach Congress has chosen. Section 213 contains no ceiling limitation on the amount of deductible medical expenses, although all earlier formulations of the deduction did contain such a limitation. *See* Section 127 of the Revenue Act of 1942, ch. 619, 56 Stat. 798; Section 213 of the Internal Revenue Code of 1954, ch. 736, 68A Stat. 69; Section 1 of the Act of October 23, 1962, 76 Stat. 1141. When the ceiling limitations were removed by the Social Security Amendments of 1965, P.L.No.89–97, 79 Stat. 286, Congress was responding to the hardship imposed when a taxpayer incurred extraordinary medical expenses but was obliged to pay income taxes on funds used to defray them. *See* H.Conf.Rep.No.682, 89th Cong., 1st Sess., at 48 (1965); U.S.Code Cong. & Admin.News 1965, p. 1943. It nonetheless recognized that its choice would allow deductibility of expenses "for facilities, devices, services, and transportation which are of the types customarily used, or taken, primarily for other than medical purposes," *id.,* U.S.Code Cong. & Admin.News 1965, p. 2243, and expressed its concern over the possibilities of abuse in such areas, swimming pools being specifically cited. *Id.* We believe the history of ceiling limitations on medical deductions and Congress' expressed concern over the abuse potential inherent in removing that limitation counsel against loose construction of § 213, but it does seem clear that even capital expenditures, to the extent they are uncompensated by increases in property value, may be considered medical expenses to the degree they are incurred "for medical care" within the meaning of § 213. *See Oliver v. Commissioner of Internal Revenue,* 364 F.2d 575, 578 (8th Cir. 1966); *Riach v. Frank,* 302 F.2d 374 (9th Cir. 1962); *Wallace v. United States,* 309 F.Supp. 748 (S.D.Iowa 1970), *aff'd,* 439 F.2d 757, 759 (8th Cir. 1971), *cert. denied,* 404 U.S. 831, 92 S.Ct. 71, 30 L.Ed.2d 60; *Gerard*

---

**2.** We note that the tax reform proposals recently submitted by the President to the Congress would eliminate deductions for "non-medical equipment like air-conditioners and swimming

pools—even if purchased for medical reasons . . . ." 9 1978 P–H Fed. Taxes ¶ 60,062 at 60,093–94 (Jan. 26, 1978).

v. *Commissioner of Internal Revenue*, 37 T.C. 826 (1962).

The central question here is the degree to which the cost of taxpayers' swimming pool addition was an expense "for medical care." The Secretary of the Treasury has promulgated regulations on this point which taxpayers do not attack and which we find wholly consistent with § 213. 26 C.F.R. § 1.213–1(e)(1)(ii) provides, in part:

> Deductions for expenditures for medical care allowable under section 213 will be *confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness.* (Emphasis added.)

26 C.F.R. § 1.213–1(e)(1)(iii) is more specific:

> Capital expenditures are generally not deductible for Federal income tax purposes. . . . However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. For purposes of section 213 and this paragraph, a capital expenditure made by the taxpayer may qualify as a medical expense, *if it has as its primary purpose the medical care . . . of the taxpayer, his spouse,* or his dependent. . . . [A] capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care . . . *may,* nevertheless, *qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is related directly to medical care.* (Emphasis added.)

We believe, in the light of the legislative history of § 213 and the Secretary's regulations, that the Tax Court erred as a matter of law in rejecting the Commissioner's argument that the substantial expense attributable to architectural and aesthetic compatibility was not incurred with the "primary purpose" of and "related directly to" the medical care of Mrs. Ferris. Section 213, by allowing complete deduction of capital expenditures even though they

may receive substantial nonmedical use, is already quite generous in providing for medical expense deductions. We have no doubt that the 89th Congress which removed the ceiling on medical expenses, not to mention the average taxpayer, would be astounded to learn that this generosity allows deduction not only of a swimming pool and a building to house it, but also of a pool addition constructed in the grand and luxurious style employed here. This is not the law. Where a taxpayer makes a capital expenditure that would qualify as being "for medical care," but does so in a manner creating additional costs attributable to such personal motivations as architectural or aesthetic compatibility with the related property, the additional costs incurred are not expenses for medical care.

It is no answer to say, as the Tax Court did, that taxpayers are not limited to choosing the cheapest form of medical treatment available to them. A taxpayer with the means and the inclination to patronize a relatively expensive physician or to select a private room for his stay in a hospital will undoubtedly deduct more from his taxable income than a taxpayer with lesser means or more frugal tastes, but the fact remains that both taxpayers are incurring costs unquestionably directly related to medical care. That cannot be said here.

The task in cases like this one is to determine the minimum reasonable cost of a functionally adequate pool and housing structure. Taxpayers may well decide to exceed that cost and construct a facility more in keeping with their tastes, but any costs above those necessary to produce a functionally adequate facility are not incurred "for medical care." Assessing the minimum cost will not always be an easy matter, but we think evidence could support reasonably certain findings in either of two ways, both of which the Commissioner attempted to use in the Tax Court. It may be possible to deduct from a taxpayer's actual costs a sum appropriate to account for unnecessarily expensive building materials and methods and for a building size larger than needed to accommodate the

therapeutic pool. Alternatively, evidence of actual costs of other taxpayers who have constructed therapeutic facilities in the same geographic area (adjusted, if necessary, for inflation) may be introduced.

Unfortunately from the point of view of judicial economy, the Tax Court did not perform the close analysis necessary to determine the minimum reasonable cost, being of the opinion that taxpayers were not limited to choosing such a facility. Much as we might like to resolve the matter without additional litigation, that is impossible on the record before us. The Commissioner's expert, Engineer Agent Frank Hanrahan, attempted to estimate deductions of luxury materials from taxpayers' actual costs, but he expressed no real confidence in his conclusions using this method because of the speculativeness of the figures with which he was working. The costs of such items as hand-cut stone, ceramic tile, exposed wood paneling, and a cathedral ceiling, relative to less expensive but adequate materials, simply do not appear in the record. Nor is there any solid evidence on which we might base a conclusion as to the amount that could have been saved had the Ferris addition been of the smaller size necessary to house the pool without additional recreational facilities.

Hanrahan also testified that other taxpayers had constructed therapeutic facilities in the general area, and that based on his examination of two of them and their actual costs, he estimated that an adequate pool and housing facility could have been constructed for $70,000, all costs included. The Tax Court found, however, that even if this approach were a proper one, there were several items necessary to the operation of a therapeutic pool that Hanrahan had not included in his hypothetical facility. At least some of the factors mentioned by the court, however, e. g., vapor barriers and water temperature, were expressly stated by Hanrahan to have been considered in his

analysis. Moreover, the court's estimate that $10,000 would be necessary to cover the cost of omitted necessities was, as the court recognized, based on no real cost evidence. In these circumstances, and because, as will be seen shortly, no final resolution of the hypothetical facility's deductible can be made now in any event, we think the soundest course is to remand the whole issue to the Tax Court in the hope that the parties' evidence will be more to the point the second time around.

■ As we mentioned earlier, the Tax Court ultimately rejected the Commissioner's hypothetical cost approach because an addition constructed at minimum functional cost would add nothing to the value of the Ferris residence. This finding was clearly erroneous. The only evidence to support it was that given by Geib, the appraiser, who specifically declined to estimate what if any value would be added by the hypothetical enclosure and pool because there were too many variables undefined, but who did indicate that an unattractive or shoddy facility *could* in fact detract from the total property value. The point, of course, is that no specific reference to the hypothetical $70,000 facility was made. On remand, the parties will no doubt want to do a better job of adducing evidence of exactly what a hypothetical adequate facility would involve, and of precisely what effect such a facility would have on the Ferris' property value.[3]

■ We emphasize in this regard that the degree to which a minimum adequate facility would increase property value, while relevant to the Tax Court's analysis, is not relevant in deciding whether or not the luxury elements of a facility are undertaken "for medical care." We have already determined that they are not. They fit into the analysis after the proper medical expense is determined, in order to decide the degree to which the expense would be

---

3. We also decline the Commissioner's invitation to apply Geib's 50% rule of thumb for value enhancement to the $70,000 facility. Geib expressly stated that the 50% factor was a maximum, subject to reduction in various circumstances, including very possibly those that would be involved in erecting a "merely" adequate $70,000 facility beside a high priced luxury residence.

"compensated" for within the meaning of section 213 by an increase in property value. A deduction for medical expenses should not in any circumstance exceed the cost of a functionally adequate facility, although we do not foreclose the possibility, if the evidence on remand should support it, that in the market of potential buyers of luxury residences, a facility of mere functional adequacy would add nothing to the property value of the related property and, thus, that the whole cost thereof should be deductible. On the other hand, we do have some difficulty in conceiving that a functional indoor swimming pool sufficient for therapeutic purposes, even though not encased in and constructed with expensive architectural and building materials, would not add with some reasonable substantiality to the fair market value of the residence, willing purchasers presumably realizing that the costs of the basic component of a more splendid recreational natatorium had already been incurred, and that the basic structure could be the beginning point of a structure more desirable to them.

For the reasons stated herein, the judgment of the Tax Court is reversed and the cause is remanded for further proceedings consistent herewith.