## C. William Haines and Sara B. Haines, Petitioner v. Commissioner of Internal Revenue, Respondent

Docket No. 8474-76.     Filed January 25, 1979.

*Robert B. Durham, Jr.,* and *Spencer A. Manthorpe,* for the petitioners.

*Lowell F. Raeder,* for the respondent.

Simpson, *Judge:* The Commissioner determined a deficiency of $4,025.01 in the petitioners' Federal income tax for 1972. The parties have settled certain issues, and the only issue remaining for decision is whether the petitioner is entitled to a medical expense deduction under section 213, I.R.C. 1954,[1] for a portion of the amount he expended for the construction of a swimming pool at his home.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, C. William Haines and Sara B. Haines, are husband and wife who maintained their legal residence in Masonville, N.J., when they filed the petition in this case. They filed their joint Federal income tax return for 1972 with the Internal Revenue Service. Mr. Haines will sometimes be referred to as the petitioner.

The petitioner suffered a fracture of the femur of his right leg while skiing in Italy in February 1971. When he returned to the United States, he was operated on and treated by an orthopedic surgeon. From February 21, 1971, to July 6, 1971, the petitioner was immobilized with a cast on his right leg. After the petitioner's operation, his doctor recommended physical therapy for him, which included whirlpool treatment, massage, and

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

active and passive exercise of the injured leg. In October 1971, the petitioner underwent another operation to increase the mobility of his leg. Following this operation, his doctor again recommended whirlpool treatment, massage, and passive exercise.

Between the two operations, the petitioner used the swimming pools of friends for the purpose of exercising his injured leg. He found that in the water, he could walk without crutches, and that after such exercise, he could continue walking out of the water without crutches for a short time. While the petitioner was in the hospital for the second operation, he discussed with his doctor the relative merits of swimming as a means of therapy for his leg, and he then ordered the construction of a swimming pool at his home. The petitioner's doctor had recommended that because the petitioner was a busy man and would require subsequent therapy, he "ought to build him a swimming pool at home."

The pool was completed in April 1972 for a total cost of $19,732.92, which the petitioner paid in that year. The swimming pool was an inground, rectangular pool which measured 30 by 40 feet. Its depth ranged from 4 feet to 9½ feet. The pool had a slide and a diving board, but it had no special equipment designed to aid the petitioner in his therapy. The pool was heated, but not enclosed.

At the time of his injury in 1971, the petitioner owned and operated Larchmont Farms in New Jersey. Since his position as manager of the farm required him to be on his feet for long periods of time, he was unable to continue in that position after his injury. The petitioner then became State Director of the Farmer's Home Administration for the U. S. Department of Agriculture on August 15, 1971. The area for which he was responsible included the States of New Jersey, Maryland, and Delaware. For the first year, he drove each day to his office in Trenton, N. J., which was 20 miles from his home. Thereafter, his office was moved to Newark, Del., 52 miles from his home, to which he drove on many days. His job required him to travel throughout the three States. While the petitioner was so employed, he also worked on his farm at nights and on weekends. In March 1976, he terminated his employment with the Department of Agriculture and resumed farming on a full-time basis.

The petitioner begins using his swimming pool in April of each year and continues such use until October. When possible, he exercises in the pool on a daily basis. During the winter, while he is traveling on business or on vacation, he attempts to stay in motels or hotels with indoor swimming pools in order to exercise in such pools. However, he is generally unable to swim more than two or three times a week during the winter. Although the petitioner has recovered from the broken leg, he still is unable to engage in weight-bearing exercises, and therefore, he swims frequently as a means of securing exercise in some manner.

On his income tax return for 1972, the petitioner deducted $13,149.28 of the $19,732.92 cost of the pool as a medical expense. In his notice of deficiency, the Commissioner determined that the amount was not an allowable medical expense deduction under section 213 and disallowed the petitioner's deduction.

## OPINION

The only issue we must decide is whether the petitioner is entitled to a medical expense deduction under section 213 for a portion of the amount he expended in installing the swimming pool.[2]

Section 213 provides in part:

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise—
(1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * *

\* \* \* \* \* \* \*

(e) DEFINITIONS.—For purposes of this section—
(1) the term "medical care" means amounts paid—
(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

In considering the question of deductibility of expenditures for "medical care" under section 213, it is necessary to bear in mind that section 262 prohibits deductions for personal, living, and family expenses. The petitioner has the burden of proving that

---

[2]At the trial, the petitioner offered expert testimony to establish that the construction of the swimming pool increased the value of his residence by $3,500. He claims a deduction only to the extent that the expenses for constructing the pool exceeded that increase in value; thus, he claims a deduction of $16,232.92.

he is entitled to the deduction he claims. *Oliver v. Commissioner*, 364 F.2d 575, 577 (8th Cir. 1966), affg. a Memorandum Opinion of this Court. Therefore, we must decide whether the petitioner has carried his burden of proving that the cost of his swimming pool was an expense incurred "for medical care" as that term is used in section 213.

The regulations under section 213 provide that deductions for expenditures for medical care are allowable if incurred "primarily for" the prevention or alleviation of illness. Section 1.213–1(e)(1)(ii), Income Tax Regs., states in part: "Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred *primarily for* the prevention or alleviation of a physical or mental defect or illness." (Emphasis added.) In relation to capital expenditures made for medical care, section 1.213–1(e)(1)(iii) provides more specifically:

(iii) Capital expenditures are generally not deductible for Federal income tax purposes. * * * However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. For purposes of section 213 and this paragraph, a capital expenditure made by the taxpayer may qualify as a medical expense, if it has as its *primary purpose* the medical care * * * of the taxpayer, his spouse, or his dependent. * * * a capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care * * * may, nevertheless, qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is *related directly to medical care.* * * * [Emphasis added.]

Therefore, under the regulations, the test is whether the petitioner's expenditures were incurred for the "primary purpose" of, and were "related directly to," his medical care. See *Ferris v. Commissioner*, 582 F.2d 1112 (7th Cir. 1978), revg. and remanding on another issue a Memorandum Opinion of this Court; *Havey v. Commissioner*, 12 T.C. 409, 412 (1949).

In light of all the facts and circumstances of this case, we must hold that the expenses the petitioner incurred in building a swimming pool were not for the *primary purpose of*, and were not *related directly to*, his medical care. Undoubtedly, swimming was beneficial to his condition, but such evidence is insufficient to establish that the primary purpose of the building of *his own pool* was related directly to his medical care. Cf. *Ferris v. Commissioner, supra*. The need for special therapy for his leg

continued for only a limited period of time. Although he remains limited as to the forms of exercise in which he can engage, his present practice of swimming as a means of exercise is not significantly different than the activities of many others who prefer that form of exercise for its undoubted advantages. During the period special therapy for his leg was required, it could have been secured through other far less costly means; for example, the petitioner could have secured the necessary therapy at the hospital or he could have arranged to swim at a health club which was not far from his residence. The pool cost the petitioner over $19,000, and we cannot accept his contention that such amount was spent primarily for therapy for his leg in view of the limited need for such therapy and the alternatives which were then available.

Moreover, even the testimony of the petitioner's physician does not support his contention that his own swimming pool was a medical necessity for him. When asked his reason for recommending swimming to the petitioner, the doctor stated: "Well, he was having to go over to the hospital daily for quite a while there to get the exercises, and then they'd put him in a whirlpool, and I felt, and had the *personal reasons* for—to advise him to build a pool himself so he could swim when he had occasion to swim." (Emphasis added.) The doctor's statements do not indicate a medical exigency for the petitioner's installation of his own pool. In *Seymour v. Commissioner*, 14 T.C. 1111, 1117 (1950), we said: "The statute deals with 'expenses paid for medical care of the taxpayer.' Not every expenditure prescribed by a physician is to be catalogued under this term, nor is every expense that may be incurred for the physical comfort of a party a medical expense." Having a swimming pool at his home made it more convenient for the petitioner to exercise in a pool, but an expenditure that merely serves the convenience of the taxpayer cannot be treated as a medical expense. *Seymour v. Commissioner*, *supra* at 1117.

Other circumstances in this case also indicate that the petitioner's swimming pool was not built for the "primary purpose" of his medical care. He testified that he had access to his pool only from April to October; thus, its use was not available to him for approximately one-half of each year. He also testified that he would like to have enclosed the pool, but the additional cost of doing so was too great. However, in *Ferris*

*v. Commissioner, supra,* where the taxpayer, a resident of Madison, Wis., was required to swim twice a day for the rest of her life, the pool was enclosed, and it was agreed that the costs of the enclosure were deductible. If swimming in his own pool was required for the treatment of the petitioner's broken leg, it does seem that such treatment should have been available for more than one-half of the year, and the fact that the pool was not available for such a large portion of the time provides further evidence that its construction was not required for medical purposes.

The pool built by the petitioner contained no special equipment to aid him with his physical therapy and was suitable for general use. In *Mason v. United States,* an unreported case (D. Hawaii 1957, 52 AFTR 1593, 57–2 USTC par. 10,012), where the taxpayer was allowed to deduct the cost of constructing a swimming pool, the pool was specially designed to provide hydrotherapy and included a ramp which allowed access to the pool from a wheelchair. The petitioner did testify that he held on to the diving board and kicked his leg as the doctor had prescribed; yet, and ordinary diving board cannot be considered special equipment "for medical care." The petitioner's pool was suitable for use by others, and in fact, he admitted that it was used by other members of his family and his staff. In contrast, the examples in the regulations of capital expenditures which are deductible as medical expenses involve equipment which is not used significantly for any purpose other than the medical care of the taxpayer; that is, eye glasses, seeing eye dog, artificial teeth and limbs, wheelchair, crutches, and inclinator or an air conditioner which is detachable from the property and purchased only for the use of the person in need of medical care. Sec. 1.213–1(e)(1)(iii); see also *Estate of Hayne v. Commissioner,* 22 T.C. 113 (1954). The evidence presented to this Court leads us to the inescapable conclusion that the petitioner desired and built his own pool for reasons of convenience, and not for the primary purpose of medical care as that term has been defined by the regulations and the courts. Accordingly, we hold that such expenses are not deductible. Sec. 262.

*Decision will be entered for the respondent.*