DAN J. EVANOFF AND JAN E. EVANOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evanoff v. Commissioner
Docket No. 19427-81
United States Tax Court
T.C. Memo 1982-600; 1982 Tax Ct. Memo LEXIS 148; 44 T.C.M. (CCH) 1394; T.C.M. (RIA) 82600; October 12, 1982. Dan J. Evanoff, pro se. James A. Kutten, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $2,028 in petitioners' Federal income taxes for the taxable year 1979. The issue remaining for decision concerns whether the costs of constructing a residential swimming pool were incurred primarily for medical purposes, and if so, the amount of those costs that were paid during the taxable year. FINDINGS OF FACT At the time petitioners filed their petition, they resided in St. Louis County, Missouri. They filed a timely 1979 Federal individual income tax return with the Internal Revenue Service Center at Kansas City, Missouri. In calculating their medical deduction for 1979 the petitioners claimed $9,753.86 as medical expenses, *149 computed as follows: doctor bills--$805.95; eyeglasses--$94.64; and swimming pool--$8,853.27. The petitioners reduced their $9,753.86 claimed medical expenses by 3 percent of their adjusted gross income, $1,287.57, and deducted $8,466.29 as medical expenses. On March 4, 1979, the petitioners entered into a contract with Baker Pool Company, 13240 Manchester Road, St. Louis County, Missouri, for the construction of an in-ground swimming pool in the back yard of their residence at 1591 Mason Knoll Road, St. Louis County, Missouri at a total cost of $15,656.35. The bid breaks down the cost of the swimming pool into the following categories: basic installation of the pool with stainless steel construction, recessed steps, under-water light, six-foot jump board, heater, gas line for the heater, pool sweep (automatic pool cleaner), timer for the pool sweep, and deck surrounding the swimming pool. The swimming pool installed in the petitioners' back yard has an oblong shape approximately 19 feet by 37 feet, a depth ranging from 3 feet to 9 feet, and 669 square feet of water surface area. The Petitioners deducted $8,853.27 of the cost of the swimming pool as a medical expenditure, determined *150 as follows: Amount
Construction of the swimming pool by
$15,656.35
Baker Pool Company
Manchester Hardware Store (fencing
140.29
mesh)
Central Hardware (drain pipe and
17.18
glue)
William T. Hobson, electrician (electrical
85.00
work for the swimming pool)
Chesterfield Fence Company
430.89
Chemicals purchased from Baker Pool Co.
23.56
Total:
$16.353.27
Less increase in FMV of home as a
result of pool:
7,500.00
Difference (amount deducted):
[1] $ 8,853.27
*151 Petitioners have three children, the oldest being a daughter, Karen (Kim) Evanoff, who was born on October 8, 1964. After Karen had experienced consistent back pain and on the advice of their petiatrician, petitioners took Kim to the McBride Clinic, Inc., in Oklahoma City, where she was examined on June 13, 1977 by Joseph F. Messenbaugh, III, M.D. an orthopedic surgeon. Kim was diagnosed as having idiopathic, adolescent scoliosis. Scoliosis is a curvature of the spine. The term idiopathic means from unknown causes. Dr. Messenbaugh recommended trunk-strengthening exercises for Kim, primarily to maintain spine suppleness and to help stabilize her spine. Daily asymmetrical exercises, including sit-ups and push-ups, were recommended to strengthen Kim's spinal muscles. Swimming was recommended as a type of exercise. Dr. Messenbaugh last examined Kim on August 4, 1980. Kim's scoliosis has always been either mild or very mild. The condition did, however, require medical attention and trunk strengthening exercises, particularly during the adolescent years (when there is rapid bone growth) in order to prevent the condition from becoming more serious. Kim was born on October 8, 1964 and *152 is now 18 years old, and as is typical with cases of this type, her current problem is one of exercising to control the pain and discomfort. In this connection, swimming is helpful. The petitioners moved from Oklahoma to St. Louis County, Missouri on or about August 14, 1978. During the fall and winter of 1978 and spring of 1979, Kim attended ninth grade at Parkway East Jr. High School, St. Louis County, Missouri. There was no swimming pool at Parkway East Jr. High School. Kim attended high school (tenth, eleventh, and twelfth grades) at Parkway West Senior High School, St. Louis County, Missouri, beginning in the fall of 1979. During her attendance at Parkway West Senior High School, the school had an inside swimming pool. Without a note from a student's parents, swimming was confined to some portion of the time a student spent in gym class. The Evanoffs did not provide the school with a note requesting special permission for Kim to swim outside of gym classes for any of the years in question. Additionally, although Kim could have taken three credits of gym during her three years at Parkway West, she took only one credit, the minimum required to complete her graduation *153 requirements. There were 11 community swimming pools within 8 miles of the petitioners' residence at 1591 Mason Knoll Road, St. Louis County, Missouri, that were open to the public during 1979. Some of these were open on a year-round basis, and the cost for year-round swimming for an individual at these pools was in the range of $250 per year. Throughout 1978 and 1979 the petitioners owned two automobiles, both of which were in operating condition. Both Dan J. Evanoff and Jan E. Evanoff had driver's licenses throughout 1978 and 1979. On or about Kim Evanoff's 16th birthday she obtained a driver's license. The petitioners purchased another automobile for her use in September 1981, and the petitioners then owned three operating automobiles. OPINION Section 213(a)(1)[2] allows as a deduction any expenses paid during the taxable year for the "medical care" of the taxpayer, his spouse, and dependents which are not compensated for by insurance or otherwise, but only to the extent such expenses exceed 3 percent of adjusted gross income. The term "medical care" is defined to include *154 any amount paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." Section 213(e)(1)(A). The regulations provide that deductions for expenditures for medical care are allowable if incurred "primarily for the prevention or alleviation of a physical or mental defect or illness." Section 1.213-1(e) (1)(ii), Income Tax Regs. See Haines v. Commissioner,71 T.C. 644 (1979). The major area of dispute and the principal focus of the parties concerns whether or not the expenditures in question were incurred "primarily for the prevention or alleviation of a physical or mental defect or illness." There are several items that are not in dispute. Respondent does not contend that the pool was constructed of an inordinately expensive material or design, reflecting excess expenses incurred entirely for personal reasons as in Ferris v. Commissioner,582 F.2d 1112 (7th Cir. 1978), revg. a Memorandum Opinion of this Court. Additionally, *155 petitioners had valuations done on their property both before and after installation of the pool. They selected a figure in the mid-range of the estimates provided, conceding that the installation increased the fair market value of their property by $7,500, leaving an expenditure of $8,853.27. Again, respondent does not quarrel with these figures. Accordingly, we must simply decide whether the $8,853.27 figure the parties agree on was primarily to alleviate a physical defect of petitioners' daughter. We decide this issue for respondent. We begin by noting that the cost of installing an in-ground residential swimming pool is not an every-day, garden-variety type of medical expenditure. While special circumstances may make the costs of a swimming pool deductible, the strong showing of necessity required by Haines v. Commissioner,71 T.C. 644 (1979), is absent herein. Certainly it cannot be said on the record before us that the pool was constructed primarily for medical reasons. Petitioners could have accommodated Kim's need to swim for approximately $250 through one of the many community swimming pools located within a few miles of their residence. Indeed, *156 some of these facilities provided swimming on a year-round basis as contrasted with the few months petitioners' pool was available. In accordance with petitioners' religious beliefs, Kim was not allowed to swim with children of the opposite sex after having reached puberty. However, we are not at all convinced petitioners thoroughly investigated the possibility of Kim swimming at the local pools at times that would not involve coeducational swimming. And in any event, if religious convictions, along with other personal considerations, impelled petitioners to build the pool, this choice is a personal one rather than a medical one. Additionally, we particularly note that petitioners, able and intelligent people, did not bother to ascertain the requirements of Parkway West Senior High that govern swimming outside of gym class. Indeed, the school was never provided with a note that would have gained Kim access to the pool outside of gym classes, and Kim took only one full credit of gym during her three years of hish school. Since this would have provided Kim with non-coeducational swimming during the months petitioners' pool was not open, it is wholly inconsistent with petitioners' *157 contentions that Kim's medical condition required that she swim regularly on a year-round basis and that it was for this reason that they installed the pool. Petitioners had two other children besides Kim, and they made significant use of the pool. It was used by guests of the family on other occasions. The pool as equipped with a diving board, and other recreational equipment was available. We are convinced that the principal reason for construction of the pool was for the personal convenience and satisfaction of the family rather than Kim's mild scoliosis. Decision will be entered for the respondent.
Footnotes
1. In computing the increase in the fair market value of their residence due to the construction of the swimming pool, the petitioners used the average or mid-point of a range of values of their residence (based on a real estate agent's reports) just prior to the construction of the in-ground swimming pool, and just after the construction of the in-ground swimming pool. The value of their residence at 1591 Mason Knoll Road, St. Louis County, Missouri, just prior to the construction of the swimming pool was $147,000; the value of their residence at 1591 Mason Knoll Road, St. Louis County, Missouri, just after the construction of the in-ground swimming pool in the back yard of their residence was $154,500.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩