HERBERT CHERRY AND ADELE CHERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cherry v. Commissioner
Docket No. 20779-80
United States Tax Court
T.C. Memo 1983-470; 1983 Tax Ct. Memo LEXIS 317; 46 T.C.M. (CCH) 1031; T.C.M. (RIA) 83470; August 11, 1983. Herbert and Adele Cherry, pro se. Alice Ann Fitzpatrick, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies of $4,186 and $5,759 in petitioners' 1976 and 1977 Federal icnome taxes, respectively. Following concessions, the matters for determination are (1) whether expenditures made in 1977 for operating and maintaining a swimming pool are deductible as medical expenses under section *318 213; [1] and (2) the amount of constructive dividends received by petitioners from Trim Knits, Inc. in 1977. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and attached exhibits are incorporated herein by reference. Petitioners resided in Muttontown, New York, when they filed the petition in this case. Swimming Pool Expenditures
In 1973 or early 1974, a doctor diagnosed Herbert Cherry (Herbert) as having severe emphysema and bronchitis. Herbert had been a heavy smoker for many years. Herbert's doctor told Herbert to quit smoking and to develop an exercise regime to regain breathing capacity. The doctor recommended swimming as the best exercise for someone in Herbert's condition. Herbert stopped smoking. He also investigated several forms of exercise. He tried jogging, riding an exercise bike and performing Canadian Air Force exercises. Herbert was unable to do these activities because they placed too much strain on his body. Accordingly, he could not *319 rely on them to restore his breathing capacity. Herbert also tried swimming. He found that swimming placed far less strain on his body than the other activities, yet it provided ample opportunity to exercise. Accordingly, he decided to swim on a regular basis. Herbert could not arrange a swimming program at a pool in his community. He investigated the availability of pools at local health spas and "Ys", but he was unable to locate a pool which offered swimming at a time which would fit into his schedule.Herbert was the president of a closely-held garment company.He was responsible for, and actively managed, most facets of the company's operations. He commuted from his home on Long Island to the office in New York City early in the morning. He worked until late at night. Herbert discovered that the pools in his community did not open early enough, or stay open long enough, to allow him to swim on a regular basis. Petitioners therefore decided to install their own pool so Herbert could swim regularly. After investigating pool design and construction, petitioners realized that their house and lot were too small. Accordingly, in 1974, they bought a different lot and constructed *320 a new house which contained an indoor swimming pool. The pool was 20 feet wide and 40 feet long. It was located in a room which was 40 feet wide and 55 feet long. Thus, the pool room had an area of 2,200 square feet. The remainder of the house had an area of 4,000 square feet. The pool and pool room cost $40,000 to complete. The remainder of the house cost $90,000 to construct.
The pool was surrounded by a wooden deck which was 10 feet wide, except for the area along one width, where it was 5 feet wide. The pool room had a higher ceiling than the ceilings in the rest of the house. The pool had a sloping floor: it was shallow at one end and deep at the other end. There was a diving board at the deep end of the pool. The pool had no specialized medical equipment. Petitioners kept the pool's water temperature at 80 degrees F. They kept the air temperature in the pool room also at 80 degrees F.The air temperature for the remainder of the house was maintained at 70 degrees F. Herbert originally wanted to construct a lap pool which could be used only for distance swimming. However, he decided to build the 20 foot by 40 foot rectangular pool because it was the smallest size *321 he could use for distance swimming while being relatively cheap to enclose.
In 1977, Herbert swam in the pool at least two times every day. Herbert increased his breathing capacity and improved his health by persistent exercise in the swimming pool. When Herbert traveled on business and was unable to swim on a daily basis the shortness of breath and wheezing symptoms of his underlying emphysema and bronchitis returned after 4 or 5 days. Adele Cherry (Adele) used the pool occasionally in 1977 as prescribed by her doctor to relieve arthritis pain.Petitioners' sons also occasionally swam in the pool. But the pool was constructed and maintained primarily to mitigate Herbert's lung problems. Herbert and Adele never entertained in the pool room. Their sons used the pool room twice for New Yer's Eve parties. Petitioners claimed on their return, and now claim in this litigation, the following medical expense deductions for maintaining the swimming pool: Amount Claimed
Amount Now
Item
on Return
[2]Claimed Heating Oil
$2,050.00
$2,519.44
Chemicals
330.00
500.00
Insurance
380.00
462.00
Electricity
860.36
Lumber
1,099.62
Carpentry
1,000.00
Dry Wells
936.00
Shades
1,258.74
*322 We find that petitioners paid the following amounts as operating and maintenance expenses for the pool in 1977: Item
Amount
Heating Oil
$1,024.65
Chemicals
50.00
Insurance
284.31
Electricity
610.58
Lumber
1,099.62
Carpentry
1,000.00
We find that petitioners made the following capital expenditures for pool improvement in 1977: Item
Amount
Dry Wells
$936.00
Shades
1,258.74
Constructive Dividends
Herbert was president of Trim Knits, Inc. in 1977. Respondent determined that Herbert received $7,114 in constructive dividends from Trim Knits, Inc. in 1977. Petitioners dispute $1,000 of this determination because they did not approve of the way in which respondent's agent audited this issue.[3]
*323 OPINION Swimming Pool Expenditures
The question for our determination on this issue is whether the 1977 expenditures for operating and maintaining the pool are deductible under section 213.
Section 213, in relevant part, provides as follows: (a) ALLOWANCE OF DEDUCTION.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * * * * * (e) DEFINITIONS.--For purposes of this section-- (1) the term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * * Expenditures for operating and maintaining a swimming pool are deductible medical expenses if the expenditures are paid for the primary purpose of *324 and are related directly to medical care. Haines v. Commissioner,71 T.C. 644, 647 (1979); sec. 1.213-1(e)(1)(iii), Income Tax Regs.
The facts and circumstances of this case convince us that petitioners' expenditures in operating and maintaining their swimming pool satisfy this test. Operating and maintaining the pool certainly was directly related to Herbert's medical care. Herbert's doctor recommended swimming to help his emphysema and bronchitis. Herbert mitigated the effect of the lung disease through diligent use of the pool. The disease symptoms returned after 5 days when he could not swim regularly. Further, maintaining a pool at his own house was the only way Herbert could swim on a regular basis. These facts convince us that the expenditures for operating and maintaining the pool were directly related to Herbert's medical care because they mitigated the effects of severe emphysema and bronchitis. We are also convinced that petitioners' primary purpose in maintaining the pool was to provide medical care for Herbert. Petitioners did not have a pool prior to the time when Herbert's lung problems were diagnosed. Also, despite *325 the doctor's recommendation to swim, petitioners did not immediately buy a pool. Instead, Herbert first investigated other less expensive forms of exercise. Plus, even after deciding that swimming was best for him, Herbert investigated the possibility of swimming in pools in his community before deciding to invest in his own pool. This careful approach shows that petitioners purchased and maintained the pool only because they needed their own pool to satisfy Herbert's medical requirement for regular exericse. In addition, Herbert used the pool at least two times every day, all year long. Petitioners purchased a new house and incurred the additional cost of putting the pool indoors so that Herbert could satisfy his need for a constant schedule of swimming. The fact that petitioners bore the additional costs which exceeded the cost of installing a purely recreational pool in order to provide Herbert with the regular exercise he needed indicates that petitioners purchased and maintained the pool primarily for Herbert's medical care. Furthermore, Adele and the children used the pool only occasionally. Adele's swimming was itself prescribed by a doctor to aid her arthritis. Petitioners *326 never entertained in the pool room. The children only entertained twice in the pool room. These additional uses were incidental to Herbert's constant use of the pool for medical purposes. Accordingly, our careful review of all the facts in the record convinces us that petitioners' primary purpose in purchasing and maintaining the pool was to provide medical care for Herbert. Respondent contends that petitioners maintained the pool primarily for recreation and personal convenience. Respondent argues that the pool expenditures were personal items which are nondeductible under section 262. As just discussed, we are convinced that the pool expenditures were properly deductible under section 213 because they were paid for the primary purpose of and were directly related to medical care. Therefore, we disagree with respondent's position. We will consider each of respondent's arguments separately. Respondent argues that the recreational nature of the swimming pool, the lack of specialized medical equipment associated with the pool and the recreational use by other members of the family support his conclusion that the pool expenditures were essentially personal rather than medical. *327 [4] We disagree. The lack of special medical equipment does not hurt petitioners' case.Herbert needed to swim in order to exercise his lungs. Unlike individuals who swim to mitigate the degenerative effects of diseases such as osteoarthritis in the legs, Herbert needed no special ramps, railings, shallow floor or whirlpool. All he needed to exercise his lungs was a swimmable pool of water. Accordingly, the lack of additional equipment is irrelevant in this case. *328 The sloping floor of the pool, the diving board and the use of the pool by other members of the family raise the question whether the primary purpose of the pool was medical or personal. See, e.g., Evanoff v. Commissioner,T.C. Memo. 1982-600. We conclude that respondent's emphasis on these factors is misplaced on the facts of this case. As discussed previously, we find that the recreational use of the pool was incidental to the primary purpose for maintaining the pool which was to mitigate Herbert's emphysema and bronchitis. Respondent also insists that Herbert maintained his own pool rather than used another pool in the community merely for convenience. Respondent contends that taxpayer convenience is not enough to support deductibility under section 213, citing Haines v. Commissioner,supra. Respondent's argument is not persuasive on the facts of this case. Herbert had to exercise to mitigate his lung diseases. Swimming was the only exercise available for him. And no pools were available for Herbert to maintain his work and exercise schedule. Herbert certainly did not have to alter his employment to become entitled to a medical expense *329 deduction. Accordingly, the facts of this case show that petitioners needed their own pool to provide effective medical care for Herbert. Accordingly, the pool was not a mere convenience. Respondent cites three cases which he contends support his argument that the pool expenditures were primarily personal in character: Haines v. Commissioner,supra,Worden v. Commissioner,T.C. Memo. 1981-366, and Altman v. Commissioner,53 T.C. 487 (1969). We find each of these cases to be distinguishable from this case. In Haines v. Commissioner,supra, the taxpayer required special therapy for a limited duration to help heal a broken leg. He built a pool which he used to exercise the leg. We found that he could have received an alternative form of adequate exercise from a therapist and that he could have swum at other pools in his area. We decided that using his own pool rather than using one of these alternatives was merely for the taxpayer's convenience. Also, we found that the taxpayer could swim in his pool only from April through October because it was built outdoors. We decided that his failure to spend *330 the extra cost to enclose the pool, and thus make it usable all year, indicated that he built and maintained the pool for personal reasons rather than primarily for medical reasons. The case currently before us is plainly different from Haines. Herbert investigated alternative forms of exercise and the availability of pools in the community.Using his own pool was not merely a convenience for Herbert because he lacked the alternatives available in Haines. Further, Herbert conscientiously used the pool every day. He paid the additional cost to cover the pool because he needed a year-round means of exercise. Accordingly, we find the facts of Haines to be distinguishable from this case.
In Worden v. Commissioner,supra, the taxpayer installed a swimming pool pursuant to his doctor's recommendation so he could exercise a troubled back. The taxpayer used the pool about four times a week. Other family members used the pool a significant amount of the time and when the taxpayer moved to a new house he did not install a new pool. On these facts we held that the pool was primarily a personal item rather than a medical item. The case currently before *331 us contrasts with Worden. Herbert used the pool at least twice a day. Also, the use by Herbert's other family members was minimal compared to Herbert's use of the pool. Further, in Worden, the fact that the taxpayer did not have a pool in his new home indicated that the pool at the old house had been maintained primarily for recreational, rather than medical, reasons. In this case, by contrast, petitioners moved from their original residence to a new home because they could not install a pool adequate for Herbert's medical needs on the original property. Petitioners' actions show that their primary motivation in maintaining the pool, unlike the taxpayers in Worden, was medical rather than personal. In Altman v. Commissioner,supra, the taxpayer deducted his transportation costs to and from his golf course as medical expenses. The taxpayer argued that the golfing expenses were deductible medical expenses because golfing was the exercise he required for treating his emphysema. In disallowing the claimed deduction we emphasized the taxpayer's failure to prove why he had to golf instead of using an alternative form of exercise which would have been *332 cheaper and which could have been conducted closer to home. Based on this failure of proof, we held that the taxpayer's golfing was primarily a personal, recreational activity, rather than a medical activity. Petitioners in this case, as previously discussed in detail, have satisfied their burden of showing that operating and maintaining the pool was done for the primary purpose of and was directly related to Herbert's medical care. Accordingly, we find the facts of Altman to be distinguishable from this case. [5]
Finally, respondent contends that petitioners failed to substantiate their claimed pool expenditures. We will separately consider each item of claimed expenditures. Petitioners claim that they paid $2,519.44 for heating oil to heat the pool and pool room in 1977. This $2,519.44 figure represents one-half of the total $5,038.88 amount which petitioners *333 claim that they spent for heating oil for the entire house for 1977. Petitioners did not have a separate heating system or a metering device with which to determine the precise amount of fuel used for the pool and pool room. Petitioners also failed to introduce evidence from the oil company, or a similar expert, concerning a proper allocation between the pool and pool room and the remainder of the house. Instead, petitioners arbitrarily chose to allocate one-half of total heating oil costs to the pool and pool room. Respondent contends that petitioners' inability to determine precisely the amount paid for heating the pool and pool room invalidates all section 213 deductions for heating oil for 1977 for failure of substantiation. We disagree. Petitioners incurred substantial costs in heating the pool and pool room in 1977. In these circumstances we will apply the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), to determine the amount of the deduction to which petitioners are entitled. See Blackburn v. Commissioner,T.C. Memo. 1982-529 (applying the Cohan rule to sec. 213 expenses). In the Cohan determination we will *334 weigh heavily against the petitioners "whose inexactitude is of [their] own making." Cohan v. Commissioner,39 F.2d at 544. Petitioners produced checks and other materials substantiating that they spent a total of $2,887.65 [6] for heating oil for the entire house in 1977. Petitioners failed to prove that they paid more than this amount in 1977. Petitioners rely on billings to show greater expenditures. However, petitioners habitually paid the bills a significant period after the billing date. Accordingly, we cannot accept the billings for year-end 1977 as substantiation that petitioners paid such amounts in that year. Accordingly, we hold that petitioners paid a total of $2,887.65 for heating oil for the entire house in 1977. For purposes of this case we think it fair to allocate the total fuel expenditure between the pool and pool room *335 and the rest of the house on a square-footage basis. The pool and pool room comprised 2,200 square feet of the total house area of 6,200 square feet. Accordingly, petitioners are entitled to a heating oil deduction of $1,024.65 for 1977 (calculated as $2,887.65 times 2,200 divided by 6,200). This $1,024.65 deductible amount results from our bearing heavily against petitioners and certainly does not overstate the amount actually paid relative to the pool.The pool and pool room would have taken more heating oil per square foot than the remainder of the house because (1) it had higher ceilings; (2) it was heated to a higher temperature; and (3) it required the heating of water in addition to the heating of air. Accordingly, we are convinced that petitioners paid at least $1,024.65 for heating oil in operating the pool during 1977. Petitioners claim that they paid $500.00 for chemicals for the pool in 1977. Petitioners introduced no documentation to substantiate these expenditures. However, we are convinced that petitioners purchased some chemicals in 1977. Accordingly, in applying the Cohan rule, we hold that petitioners are entitled to a $50.00 deduction for chemicals *336 for 1977. Petitioners claim that they paid $462.00 for insurance for the pool in 1977. Petitioners substantiated that they paid $924.00 for insurance for the entire house in 1977. [7] Petitioners arbitrarily allocated one-half of this $924.00 amount to the pool. Petitioners can provide no basis for an accurate allocation. In the context of this case we think it proper to allocate the insurance costs under the Cohan rule among the pool and the remainder of the house by relative cost. The pool cost $40,000.00 to construct. The entire house cost $130,000.00 to construct. Accordingly, we hold that petitioners are entitled to a $284.31 deduction for pool insurance for 1977 (calculated as $924.00 times $40,000.00 divided by $130,000.00). *337 Petitioners claim that they paid $860.36 for electricity associated with the pool in 1977. Petitioners substantiated that they paid $1,720.72 for electricity for the entire house in 1977. Petitioners arbitrarily allocated one-half of this $1,720.72 amount to the pool. Petitioners provided no basis for an accurate allocation. In the context of this case we think it proper to allocate the electricity costs under the Cohan rule among the pool and the remainder of the house by relative area as we did with heating oil. Accordingly, we hold that petitioners are entitled to a $610.58 deduction for pool electricity for 1977 (calculated as $1,720.72 times 2,200 divided by 6,200). Petitioners claim deductions for the cost of alterations made to the pool facility as follows: Item
Claimed Deduction
Lumber
$1,099.62
Carpentry
1,000.00
Dry Wells
936.00
Shades
1,258.74
Respondent argues that petitioners failed to substantiate these payments. We find petitioners' substantiation to be adequate. Petitioners introduced checks showing payments in the amounts claimed. They also testified in detail concerning the nature of the expenditures.Based on our careful consideration *338 of petitioners' demeanor and our review of the facts in the record we hold that petitioners made the payments in 1977 for the purposes claimed.
The lumber and carpentry expenditures were made to replace the interior face of the walls in the pool room. During the first three years of the pool operation (from 1974 to 1977) petitioners did not understand the proper balance of water temperature, chemicals, humidity, etc., in operating the pool. As a result of their inexperience, petitioners allowed the wall facing to mildew, thus drastically shortening the facing's useful life. Petitioners replaced the facing after they gained sufficient experience to prevent the mildew problem from recurring. Accordingly, the new wall facing was expected to last longer than its predecessor. The useful life for the new facing was about the same life as the original facing would have had, had the unexpected mildew problem not developed. Petitioners did not install dry wells or shades when they constructed the pool facility in 1974. Petitioners added these items because they thought that their completed pool facility would be incomplete without them. In determining whether petitioners may deduct *339 the expenditures for these alternations we must decide whether the expenditures were made for the operation or maintenance of the pool facility or whether they constituted capital improvements of the pool facility. Capital expenditures may be deducted as a medical expense in the year of payment, but only to the extent that the expenditure exceeds the increase in value of the underlying property which results from the expenditure. Sec. 1.213-1(e)(1)(iii), Income Tax Regs. By contrast, the entire amount of operation and maintenance expenditures qualifies for a section 213 deduction regardless of the impact which the expenditure has on the value of the underlying property, and even if none, or only a portion, of the original cost of the underlying capital asset itself qualified as a medical expense deduction. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.
The outlays for lumber and carpentry were in the nature of a repair, and thus constituted an operation or maintenance expenditure. The mildew problem arose unexpectedly after petitioners began *340 to operate the pool. When they discovered how to control the mildew they replaced the damaged boards. This expenditure merely retained the pool facility in its original, ordinarily efficient operating condition.It did not prolong the life of the pool facility beyond the life expected before the mildew problem arose. In these circumstances the expenditures constituted an operation or maintenance expense rather than a capital outlay. Midland Empire Packing Co. v. Commissioner,14 T.C. 635 (1950); American Bemberg Corp. v. Commissioner,10 T.C. 361 (1948), affd. per curiam 177 F.2d 200 (6th Cir. 1949); sec. 1.162-4, Income Tax Regs. Accordingly, petitioners may deduct the lumber and carpentry expenditures as medical expenses in 1977. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.
By contrast, the dry wells and shade expenditures constituted improvements to the pool facility. Accordingly, they are capital expenditures. Mt. Morris Drive-In Theatre Co. v. Commissioner, 25 T.C.. 272 (1955), affd. 238 F.2d 85 (6th Cir. 1956).Petitioners provided no basis *341 for determining the extent, if any, to which these expenditures exceeded the increase in value to the property which was brought about by installing the dry wells and shades.Accordingly, petitioners are not entitled to deduct any part of the dry well and shade expenditures as medical expenses in 1977. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.
Constructive Dividend
Herbert was president of Trim Knits, Inc. in 1977. Respondent determined that he received $7,114 in constructive dividends from Trim Knits, Inc. in 1977. Petitioners dispute $1,000 of this determination because they did not approve of the method by which respondent's agent audited this issue. Petitioners do not disagree with the substance of respondent's determination. We will generally not look behind the statutory notice of deficiency to investigate the manner or method of respondent's administrative procedure. Proesel v. Commissioner,73 T.C. 600 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). Petitioners' position provides no *342 reason for us to make an exception to this general rule. Compare Jackson v. Commissioner,73 T.C. 394 (1979); Suarez v. Commissioner,58 T.C. 792 (1972). Trial in this Court constitutes a de novo determination on the merits. Because petitioners do not contest the substance of respondent's constructive dividend determination we hold for respondent on this issue.
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The stipulation contained information concerning these new claims. Respondent does not contend that the additional claims were improperly placed in controversy. Accordingly, we will consider petitioners' latest claims without requiring a formal amendment to the pleadings.↩
3. This issue was placed in controversy in the stipulation. We will consider it without requiring a formal amendment to the pleadings. See note 2, supra.↩
4. Respondent refers in his brief to Rev. Rul. 83-33, 1983-9, I.R.B. 5 (Feb. 28, 1983). We note that revenue rulings merely represent the legal conclusions of one of the parties to this dispute. They are not binding on us. Stubbs, Overbeck & Assocs. v. United States,445 F.2d 1142 (5th Cir. 1971); Browne v. Commissioner,73 T.C. 723 (1980). Also, respondent's position in Rev. Rul. 83-33 is not apposite in this case because it holds that expenditures for a lap pool with special medical equipment are deductible as a maedical expense for a taxpayer who suffers severe osteoarthritis. Respondent does not purport in Rev. Rul. 83-33↩ to rule on other fact situations such as the one before us today.
5. Respondent does not contend that petitioner's pool expenditures were unreasonably high and that they should be limited under the doctrine of Ferris v. Commissioner,582 F.2d 1112 (7th Cir. 1978), revg. T.C. Memo. 1977-186↩. Accordingly, we will not consider that issue in this case.
6. We note that the stipulation states that petitioners paid $2,887.55 for heating oil for the house for 1977. Based on our careful consideration of the checks, bills and petitioners' testimony we hold that petitioners paid $2,887.65. The difference, we suspect, is merely a mathematical error in the stipulation.↩
7. Petitioners produced a check to their insurance company indicating a payment of $924.00. Petitioners produced insurance bills of only $883.00. As with the heating oil expenditures we again find the checks to be better evidence than the bills of amounts actually paid in 1977. Unlike the heating oil expenditures, however, reliance on the checks in the case of the insurance expenditures benefits petitioners rather than respondent.↩