T.C. Memo. 2010-109

UNITED STATES TAX COURT

THEODORE M. AND JACQUELINE GREEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8247-08.                    Filed May 17, 2010.

Theodore M. Green and Jacqueline Green, pro sese.

<u>Michael Park</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Theodore M. Green (Mr. Green) and Jacqueline Green (Ms. Green) petitioned the Court for redetermination of the following deficiencies in Federal income tax and penalties:

|       |            | Penalty   |
| Year  | Deficiency | Sec. 6662 |
| ----- | ---------- | --------- |
| 2004  | $3,383     | $677      |
| 2005  | 7,188      | 1,438     |

In his answer, respondent further asserted that petitioners'
underpayments of tax for both 2004 and 2005 were attributable to
fraud under section 6663.[1]

The issues for decision after concessions[2] are: (1) Whether
petitioners may deduct from income for 2004 as a net operating
loss (NOL) carryforward $8,098 relating to a $166,013 damage
award judgment that Ms. Green never received and that has now
been discharged in bankruptcy; (2) whether Social Security
disability benefits Ms. Green received in 2004 should be treated
as nontaxable worker's compensation benefits; (3) whether
petitioners are entitled to a long-term capital loss carryover of
$3,000 for 2004; (4) whether petitioners failed to report pension
income of $7,978 for 2004; (5) whether petitioners are entitled
to deductions on Schedule A, Itemized Deductions, for medical
expenses of $53,888 and $102,242 for 2004 and 2005, respectively;
(6) whether petitioners are liable for fraud penalties under

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Amounts
are rounded to the nearest dollar.

[2]Respondent concedes that petitioners are entitled to
medical expenses of $355 and $4,347 for 2004 and 2005,
respectively.

section 6663 for 2004 and 2005; and (7) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2004 and 2005.  For all purposes hereafter, the term "years at issue" shall refer to 2004 and 2005.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference.  At the time petitioners filed their petition, they resided in California.

Petitioners are husband and wife.  From 1985 to September 19, 2005, Mr. Green worked as a tax service representative and as a tax auditor for respondent.

I.   Income From Default Judgment, Social Security Disability Benefits, and Pensions

A.   Net Operating Loss Carryforward and Long-Term Capital Loss

Before November 1989 Ms. Green worked on a General Motors Corp. (GM) assembly line.  On November 12, 1989, Ms. Green was injured at a grocery store when she was hit by a shopping cart. Her injuries were apparently so severe that she was unable to continue to work on the assembly line.  On November 7, 1990, Ms. Green filed a lawsuit for personal injury damages against the individual who hit her with the shopping cart, and on November

12, 1996, Ms. Green obtained a $166,013 default judgment against that individual.

On March 14, 1997, in a bankruptcy proceeding, the person who hit Ms. Green with the shopping cart was discharged of liability to pay the $166,013 default judgment, and petitioners never collected the damages. Petitioners never included any portion of the $166,013 judgment in taxable income, and the record does not establish that petitioners had any tax basis in the uncollected judgment.

On their 1997 joint individual income tax return petitioners claimed an $11,068 casualty loss deduction relating to the $166,013 uncollected judgment discharged in bankruptcy. Petitioners attached to their 1997 tax return a statement that they intended to deduct the balance of the $154,946 uncollected judgment over the course of the next 15 years--$11,068 in each year--as a loss carryforward under section 172.

On their 2004 joint individual income tax return petitioners claimed an NOL carryforward of $8,098 related to the uncollected judgment. Petitioners also claimed a long-term capital loss of $3,000, which petitioners considered to represent a portion of the uncollected judgment.[3]

_____

[3]Petitioners did not attach a Schedule D, Capital Gains and Losses, to their 2004 return. On Aug. 3, 2005, respondent received petitioners' Schedule D, on which they claimed a long-term capital loss of $3,000. Petitioners do not account for why
(continued...)

B.  Social Security Disability Benefits

After sustaining injuries from the shopping cart in November 1989, Ms. Green worked for GM as a decal assembler.  On August 27, 1991, Ms. Green was involved in an industrial accident at a GM plant.  Her injuries required surgery and left her unable to work.  On August 6, 1992, Ms. Green filed a claim for Social Security disability benefits at the order of GM, and on December 17, 1993, Ms. Green began to receive Social Security disability benefits.

In 2004 Ms. Green received Social Security disability benefits of $13,495.  On their 2004 return petitioners reported the $13,495 but did not report any amount of the $13,495 as taxable income, on the grounds that the benefits were excludable from income under section 104.

C.  Pension Income

For 2004 the State of California filed a Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., with the IRS that reported Mr. Green as having received pension income of $1,578. Petitioners reported Mr. Green's pension income as taxable income

---

[3](...continued)
the combined amount of the net operating loss (NOL) carryforward and the long-term capital loss reported on their 2004 return is $30 higher than the NOL carryforward of $11,068 reported on their 1997 return or--as discussed below--on each of their 2000, 2001, and 2003 returns.

on their 2004 return.  Also for 2004, the GM Hourly-Rate Pension Trust filed a Form 1099-R with the IRS that reported Ms. Green as having received pension income of $8,778, of which $7,979 was taxable.  Petitioners did not include any amount of Ms. Green's pension income as taxable on their 2004 return.

D.  Prior Litigation

On their 2000 and 2001 joint individual income tax returns petitioners claimed an NOL carryforward of $11,068 relating to the uncollected judgment.  Petitioners also reported Social Security disability benefits received by Ms. Green of $12,258 and $12,708, for 2000 and 2001, respectively, but did not report any amount as taxable income.

The Internal Revenue Service (IRS) issued timely notices of deficiency for 2000 and 2001, and petitioners filed petitions with this Court.[4]  In a consolidated Tax Court opinion released on March 9, 2006, Green v. Commissioner, T.C. Memo. 2006-39 (Green I), affd. 262 Fed. Appx. 790 (9th Cir. 2007), we held that petitioners were not entitled to deduct the NOL carryforward as a loss under section 165 and that Ms. Green's Social Security disability benefits were taxable for both 2000 and 2001. Petitioners appealed our decision in Green I to the U.S. Court of Appeals for the Ninth Circuit.  The Court of Appeals affirmed our

---

[4]The cases for 2000 and 2001 became docket Nos. 2475-04 and 4970-05, respectively.

decision in an unpublished opinion issued on December 28, 2007. Mr. Green testified at trial that he appealed the decision of the Court of Appeals to the U.S. Supreme Court. The record does not indicate whether petitioners filed a writ of certiorari with the Supreme Court, but it is clear that the Supreme Court did not grant certiorari in petitioners' case.

On their 2003 joint individual income tax return petitioners again claimed an NOL carryforward of $11,068 and failed to report any of Ms. Green's Social Security disability benefits as taxable income. The IRS issued a notice of deficiency, and petitioners filed a petition.[5] In an opinion released on August 7, 2007, Green v. Commissioner, T.C. Memo. 2007-217 (Green II), we held that petitioners were not entitled to deduct the NOL carryforward and that Ms. Green's Social Security disability benefits were taxable. Petitioners did not appeal Green II.

II. Schedule A Medical Expenses

Petitioners claimed unreimbursed medical expenses of $1,525 on Schedule A of their 2004 return. Petitioners claimed unreimbursed medical expenses of $38,367 on Schedule A of their 2005 return. At the time of trial petitioners claimed medical expenses for 2004 and 2005 of $53,888 and $102,242,

_____

[5]The case for 2003 became docket No. 5216-06.

respectively.[6]  These sums included expenditures related to
transportation expenses, housekeeping expenses, gas and electric
bills, and accrued but unpaid general medical expenses.

A.   Transportation Expenses

After her accident at the GM plant in 1991 Ms. Green was
unable to drive an automobile.  For 2004 and 2005 petitioners
hired Christopher McGrath (Mr. McGrath) to be Ms. Green's
personal driver.  Mr. McGrath drove Ms. Green to her numerous
doctor's appointments, the grocery store, and to have her hair
and nails done.  Mr. McGrath did not possess any medical
training, and he drove a Honda Civic that was not modified in any
way to transport a physically disabled individual.  Neither Mr.
McGrath nor petitioners kept a log or records showing the dates
and times Mr. McGrath drove Ms. Green to her medical
appointments.

Ms. Green paid only a portion of Mr. McGrath's service fees.
The balance of Mr. McGrath's invoices for transporting Ms. Green
was billed to Sedgwick Management Co. (Sedgwick), a car service
provider.  In 2004 and 2005 Ms. Green paid Mr. McGrath $135 and

---

[6]At the time petitioners filed their 2004 and 2005 returns,
they believed that GM would pay many of their accrued medical
expenses.  As GM failed to pay, petitioners at trial claimed
medical expenses in addition to those reported on their returns.

$2,365, respectively, while Mr. McGrath billed Sedgwick $756 and $13,235, respectively.[7]

### B.  Housekeeping Expenses

Ms. Green's injuries also prevented her from performing household chores.  For 2004 and 2005 petitioners hired two housekeepers to clean the house, cook the meals, and serve Ms. Green at petitioners' home.  Petitioners paid these housekeepers $17,770 and $16,380 in 2004 and 2005, respectively.

### C.  Gas and Electric Bills

For 2004 petitioners paid $1,566 and $2,179 for their gas and electric bills, respectively.  For 2005 petitioners paid $585 and $1,950 for their gas and electric bills, respectively.

### D.  Method of Accounting

On their 1985 joint income tax return petitioners reported that they operated a small tax service business.  On their Schedule C, Profit or Loss From Business, attached to their 1985 return, petitioners elected to report their Schedule C income and expenses on an accrual basis.  For 2004 and 2005 petitioners were not engaged in a Schedule C business.

---

[7]Sedgwick failed to pay Mr. McGrath's invoices in full for the years at issue, and Mr. McGrath currently has liens against Sedgwick for the unpaid portions of his service fees for transporting Ms. Green.

III. <u>Present Litigation</u>

On January 17, 2008, respondent sent petitioners a notice of deficiency for the years at issue.  On April 7, 2008, petitioners filed a petition with this Court.  On June 11, 2008, respondent filed an answer which alleged that petitioners were subject to fraud penalties for the years at issue under section 6663.  On September 2, 2008, petitioners filed a reply to respondent's answer, which denied the allegations of fraud.  On May 14, 2009, respondent filed an amendment to answer which asserted collateral estoppel as an affirmative defense to whether petitioners are entitled to exclude their Social Security disability benefits from income under section 104 and deduct an NOL carryforward under section 165 for 2004.  A trial was held on May 14, 2009, in Los Angeles, California.  At trial petitioners argued that they were entitled to deduct medical expenses for 2004 and 2005 in excess of those listed on their respective returns.

OPINION

I.   <u>Burden of Proof</u>

Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving that respondent's determinations are incorrect.[8]  See Rule 142(a)(1).

---

[8]Petitioners do not argue that the burden of proof shifts to respondent pursuant to sec. 7491(a), nor have they shown that the threshold requirements of sec. 7491(a) have been met for any of the determinations at issue.

Respondent has the burden of proof by clear and convincing evidence with respect to his determination of fraud. See Rule 142(b).

II. Net Operating Loss Carryforward and Social Security Benefits

Petitioners argue that they are entitled to deduct under section 165 an NOL carryforward of $8,098 for 2004 related to the uncollected judgment of $166,013 which Ms. Green was awarded as a result of her shopping cart accident. Petitioners also argue that the Social Security disability benefits of $13,495 that Ms. Green received in 2004 constitute worker's compensation under section 104 and are thus not includable in gross income. Respondent contends that petitioners are precluded under the doctrine of collateral estoppel from relitigating these issues. We agree with respondent.

Collateral estoppel exists for the "dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation." Meier v. Commissioner, 91 T.C. 273, 282 (1988); see also Montana v. United States, 440 U.S. 147, 153-154 (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). In general, the doctrine of collateral estoppel forecloses relitigation of issues actually litigated and necessarily decided in a prior suit. Parklane Hosiery Co. v. Shore, supra at 326 n.5; Meier v. Commissioner, supra at 282;

<u>Peck v. Commissioner</u>, 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990).

This Court, expanding upon three factors identified by the Supreme Court in <u>Montana v. United States</u>, <u>supra</u> at 155, has set forth five prerequisites necessary for the application in factual contexts of collateral estoppel:

> (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.

> (2) There must be a final judgment rendered by a court of competent jurisdiction.

> (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.

> (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.

> (5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.

> [<u>Peck v. Commissioner</u>, <u>supra</u> at 166-167; citations omitted.]

All five requirements are satisfied in the instant case: (1) The issues of whether petitioners are entitled to exclude their Social Security disability benefits from income and deduct an NOL carryforward are identical to the issues litigated in Green I and Green II; (2) final judgment was rendered in both cases; (3) the parties in Green I and Green II are identical to those in the instant case; (4) the parties litigated the issues and the resolution of those issues was essential to the decision

in both Green I and Green II; and (5) the controlling facts and applicable legal rules concerning the issues in the instant case are unchanged from those in Green I and Green II.

Accordingly, the doctrine of collateral estoppel applies, and petitioners are precluded from relitigating the net operating loss carryforward and Social Security benefits issues raised in Green I and Green II.

III. Long-Term Capital Loss

Section 1211 provides that in the case of noncorporate taxpayers, capital losses are deductible only to the extent of capital gains plus $3,000. When capital losses exceed capital gains by more than $3,000, the excess may be carried over to later taxable years to reduce capital gains or a limited amount of ordinary income. Sec. 1212(b). A long-term capital loss is the loss from the sale or exchange of a capital asset held for longer than 1 year. Sec. 1222(4).

Mr. Green testified at trial that the $3,000 capital loss was not from the sale of a capital asset but rather constituted a recharacterization of a portion of the $11,068 NOL carryforward that respondent had previously disallowed. The record does not indicate that the loss is related to the sale of a capital asset. Accordingly, we sustain respondent's determinations regarding the long-term capital loss.

IV.  Pension Income

Petitioners argue that Ms. Green's $8,778 of pension income for 2004 constituted worker's compensation.  Petitioners claim that GM issued the Form 1099-R out of vindictiveness against petitioners and that the proceeds had been categorized as worker's compensation in prior years.

Petitioners offered no evidence that Ms. Green's pension income was payment of worker's compensation.  At trial Mr. Green testified that GM was either "ignorant or malicious" in issuing the Form 1099-R but the record is devoid of anything to corroborate this claim.  Accordingly, we sustain respondent's determination regarding petitioners' pension income.

V. Deductions for Medical Expenses

Petitioners argued at trial that they incurred medical expenses of $54,888 and $102,242 for 2004 and 2005, respectively.  These consisted of the following amounts:  (1) Medical expenses conceded by respondent of $355 and $4,347 for 2004 and 2005, respectively; (2) transportation costs of $891 and $15,600 for 2004 and 2005, respectively; (3) housekeeper expenses of $17,770 and $16,380 for 2004 and 2005, respectively; (4) gas and electric expenses of $3,755 and $2,537 for 2004 and 2005, respectively; and (5) accrued but unpaid medical expenses of $31,127 and $63,381 for 2004 and 2005, respectively.

Section 213(a) allows for the deduction of paid expenses "not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income." We have characterized section 213 as carving out "a limited exception" to the general rule in section 262 that prohibits the deduction of personal, living, or family expenses. Jacobs v. Commissioner, 62 T.C. 813, 818 (1974). The deductibility of the expenses at issue hinges on whether they were paid for petitioner's medical care. If so, they are deductible medical expenses under section 213. If not, they are nondeductible personal expenses under section 262.

The term "medical care" includes amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". Sec. 213(d)(1)(A). The regulations provide that "Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness." Sec. 1.213-1(e)(1)(ii), Income Tax Regs. Furthermore, to substantiate medical and dental expenses under section 213, the taxpayer must furnish the name and address of each person to whom payment was made and the amount and date of each payment. See sec. 1.213-1(h), Income Tax Regs.

As discussed below, petitioners have failed to meet their burden of substantiating any of their claimed medical expenses. Therefore, no deductions for medical expenses will be allowed beyond those respondent has already conceded.

A.    Transportation Costs

Petitioners claim that the amounts charged by Mr. McGrath for transporting Ms. Green in 2004 and 2005 constitute deductible medical expenses.  First, petitioners are not entitled to claim the amounts billed to Sedgwick as medical expenses.[9]  Petitioners have presented no evidence to show that they were in any way associated with the payments made by Sedgwick to Mr. McGrath, and Sedgwick has failed to fully pay Mr. McGrath for the amounts billed.

With regard to petitioners' out-of-pocket expenses, transportation costs related to personal errands are nondeductible personal expenses.  Sec. 262; Haines v. Commissioner, 71 T.C. 644, 646 (1979).  Although respondent concedes that transportation costs associated with driving Ms. Green to doctor's appointments may be deductible medical expenses, petitioners have failed to provide any records to substantiate the amounts of those expenses or the dates and times those expenses were incurred.  See sec. 1.213-1(h), Income Tax

[9]Petitioners paid Mr. McGrath $135 in 2004 and $2,365 in 2005 for his services as a driver.  Mr. McGrath billed Sedgwick $756 in 2004 and $13,235 in 2005 for transporting Ms. Green.

Regs.  The record indicates that a large number, if not the majority, of Ms. Green's trips with Mr. McGrath were to run personal errands.[10]  Therefore, we find that petitioners have not met their burden to show that their travel costs constitute medical expenses.

As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to substantiate adequately the precise amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of the deductible expense and allow the deduction to that extent.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  In these instances, the Court is permitted to make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra at 544. However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made.  Vanicek v. Commissioner, supra at 742-743.  Without

[10]Mr. McGrath testified that he drove Ms. Green to her doctor's appointments as well as to run her personal errands such as grocery shopping, hair styling, and manicures.

such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

The record provides no satisfactory basis for estimating the amounts of petitioners' transportation costs that may have been used for trips to the doctor's office as opposed to the hair stylist. Consequently, the Court will not apply the Cohan rule to estimate the amounts of petitioners' transportation costs that may constitute medical expenses.

B.   Housekeeper Costs

Petitioners claim that the amounts they paid to their housekeepers in 2004 and 2005 constitute medical expenses. The housekeepers did not render medical care but were required because Ms. Green, according to Mr. Green's testimony at trial, "maintains a complete, meticulous, excellent, clean" home, and "does not like filth in any way, shape or fashion." Although petitioners' zeal for cleanliness may have resulted in a psychological benefit to Ms. Green, it was not "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". See sec. 213(d)(1)(A). Expenses incurred which are merely beneficial to the general health of an individual are not deductible. Gardner v. Commissioner, T.C. Memo. 1983-541; sec. 1.213-1(e)(1)(ii), Income Tax Regs. Moreover, the salary and cost of room and board for housekeepers hired on the advice of a

doctor are not deductible medical expenses.  Borgmann v. Commissioner, 438 F.2d 1211 (9th Cir. 1971), affg. T.C. Memo. 1969-129.  Accordingly, petitioners have failed to show that their payments to their housekeepers constitute medical expenses.

C.    Gas and Electric Bills

Petitioners seek to deduct their gas and electric bills for the years at issue as medical expenses.  In general, the cost of maintaining a household, including amounts paid for utilities, are personal expenses which are not deductible.  Sec. 1.262-1(b)(3), Income Tax Regs.  Petitioners testified at trial that they paid some of their gas and electric bills in order to power a heating pool and several devices that were therapeutic for Ms. Green.  Where a living expense is used primarily for the alleviation of an ailment, a medical deduction is allowable to the extent of the excess cost attributable to the medical purpose.  Gardner v. Commissioner, supra; see also Randolph v. Commissioner, 67 T.C. 481 (1976); Harris v. Commissioner, 46 T.C. 672 (1966).  Petitioners have failed to demonstrate what portion of their gas and electric bills was used to power devices employed primarily for the alleviation of Ms. Green's medical problems and whether their utility costs were higher as a result of the devices.  Therefore, we find that their gas and electric bills do not constitute medical expenses.

D.   Accrued but Unpaid Medical Expenses

At trial petitioners claimed a balance of medical expense deductions of $31,127 and $63,381 for 2004 and 2005, respectively.  Petitioners argue that these expenses are accrued medical expenses that have not yet been paid.  Petitioners further argue that they were accrual basis taxpayers for the years at issue and base this assertion on their election to treat their Schedule C business on an accrual basis on their 1985 return.

Petitioners' method of accounting is irrelevant.  Medical expenses may be deducted only in the year of actual payment. Sec. 1.213-1(a)(1), Income Tax Regs.  As far as the record is concerned, petitioners' allegedly accrued but unpaid medical expenses appear to have been conjured out of thin air. Petitioners have failed to substantiate any of their medical expenses not otherwise conceded by respondent, and the Court is left with no basis upon which to estimate them.  Accordingly, other than those respondent has conceded, we allow none of petitioners' claimed medical expense deductions for the years at issue.

VI.  Fraud Penalty

In order to show fraud under section 6663, respondent must prove:  (1) An underpayment exists; and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal,

mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

A. Underpayment of Tax

Respondent must first show by clear and convincing evidence that petitioners had an underpayment of tax in each of the years at issue. As discussed above, respondent has shown that petitioners received income from Social Security disability benefits and pensions on which they failed to pay tax for 2004. Respondent has also shown that petitioners claimed deductions for medical expenses, NOL carryforwards, and long-term capital losses for 2004, and medical expenses for 2005, to which they were not entitled and which resulted in underpayments of tax. Therefore, respondent has satisfied his burden of proof on this issue for both 2004 and 2005.

B. Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets,

(5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash.  Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, 419 F.3d 829, 832 (8th Cir. 2005), affg. T.C. Memo. 2003-332; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  Niedringhaus v. Commissioner, supra at 211. Respondent must prove fraud for each year at issue.  See id. at 210; Ferguson v. Commissioner, T.C. Memo. 2004-90.  Petitioners' behavior with respect to their income may be evaluated in the light of these factors, as follows.

1.    Understated Income

Respondent has shown that petitioners understated their income for 2004.  This factor is mitigated by petitioners' inclusion of their Social Security disability benefits on their 2004 return as proceeds excluded from taxable income by section 104.  Respondent argues that petitioners had reason to know at the time they filed their 2004 return that their position regarding the benefits was incorrect because respondent had already issued notices of deficiency determining that the

benefits were taxable for 2001 and 2002.  At the time petitioners filed their 2004 return, however, no court had issued a decision regarding the issue.

Petitioners also omitted pension income on their 2004 return.  This factor militates in favor of a finding of fraud.

### 2.  Inadequate Records

The record indicates that petitioners did not keep adequate records for either 2004 or 2005.  They failed to substantiate the bulk of their medical expense deductions for each of the years at issue.

### 3.  Implausible Behavior

Petitioners believed, at the time they filed their 2004 return, that the taxation of their Social Security disability benefits and the allowance of their NOL carryforward presented valid legal disputes to be decided by the courts.  Although Mr. Green, a former IRS agent, placed too much faith in his tax analytical skills, his behavior with regard to tax reporting has been consistently plausible:  petitioners first notified the IRS in 1997 of their attempt to claim a casualty loss deduction and kept the theory alive through petitions and appeals as long as possible.  Less easy to countenance are the large claimed medical expense deductions.  However, both petitioners credibly testified to the extent of their medical problems and have maintained a consistent position reflecting their belief that they were

entitled to medical expense deductions. Petitioners also had a consistent, if flawed, rationale for not reporting Ms. Green's GM pension income and for reporting a long-term capital loss for 2004.

### 4. Concealment of Income

Petitioners did not actively conceal income or assets. The Social Security disability benefits they received were listed on their 2004 return. Petitioners did not report Ms. Green's GM pension income, but they also made no attempt to conceal it when their return came under audit.

### 5. Compliance With Tax Officials

Petitioners fully complied with the audit process and all court proceedings.

### 6. Illegal Activities

Petitioners never engaged in illegal activities.

### 7. Pattern of Misconduct With Intent To Mislead

Petitioners did not engage in a pattern of conduct to mislead tax authorities. As previously stated, petitioners honestly believed they were entitled to exclude their Social Security disability benefits and the GM pension from income and deduct the uncollected judgment resulting from the shopping cart incident. Petitioners were also under the impression that they were entitled to additional medical expense deductions for transportation costs, housekeeping costs, and gas and electric

bills for the years at issue. The record does not indicate that petitioners attempted to deduct large and unsubstantiated medical expenses on their returns for prior years.

### 8. Credibility of Testimony

Petitioners' testimony was generally credible with regard to their intent.

### 9. False Documents

Petitioners never intentionally filed a false document.

### 10. Failing to File Tax Returns

Petitioners timely filed their 2004 and 2005 returns.

### 11. Dealing in Cash

Petitioners did not deal in cash.

As a result of the paucity of badges of fraud, we find that respondent has failed to show by clear and convincing evidence that petitioners filed their 2004 and 2005 returns with the intent to evade tax.

## VII. Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes an accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax. The penalty is equal to 20 percent of the portion of any underpayment attributable to a substantial understatement of income tax. Id. The term "substantial understatement" is defined as exceeding the greater of: (1) 10 percent of the tax required to be shown on the return for the

taxable year, or (2) $5,000.  Sec. 6662(d)(1)(A).  Section 6662(a) and (b)(1) also imposes a penalty equal to 20 percent of the amount of an underpayment attributable to negligence or disregard of rules or regulations.  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).

We hold that petitioners are liable for the penalty for negligence in 2004 and substantial understatement of income tax in 2005.  Petitioners' failure to produce records substantiating their medical expenses, NOL deductions, and Social Security disability benefit exclusions supports the imposition of the accuracy-related penalty for negligence for 2004.  Petitioners' understatement of income tax as reflected in the notice of deficiency is greater than $5,000 and 10 percent of the tax required to be shown on the return in 2005.  Thus, respondent has met his burden of production under section 7491(c).

An accuracy-related penalty is not imposed on any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The taxpayer bears the burden of proof with regard to those issues.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioners have failed to show reasonable cause, substantial authority, or any other basis for reducing the penalties.  Mr. Green was a tax service representative with the IRS for over a decade.  With this

background, he had a wider range of knowledge of tax matters than do members of the general public.  See <u>Kendrix v. Commissioner</u>, T.C. Memo. 2006-9.  The Court sympathizes with petitioners for the injuries that have afflicted them over the years.  Unfortunately, given the dearth of evidence to substantiate petitioners' medical expenses, NOL deductions, and Social Security disability benefit exclusions, we are unable to mitigate the penalties.  Accordingly, we find petitioners liable for the section 6662 penalty for 2004 and 2005 as commensurate with respondent's concessions and our holding.  See <u>Higbee v. Commissioner</u>, <u>supra</u> at 446.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.